# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | | |
|---|---|---|
| CARPENTERS/MILLWRIGHTS LOCAL | : | CIVIL ACTION |
| UNION NO. 865, FRED CHAPPELL, | | |
| SAM ALTMAN, JEROME ROOKS, | : | |
| JOHN A. GRAHAM, HARRIET J. | | |
| SMITH, and EDWIN LASHLEY, | : | |
| | | |
| Plaintiffs, | : | |
| | | |
| v. | : | |
| | | |
| UNITED BROTHERHOOD OF | : | |
| CARPENTERS AND JOINERS | | |
| OF AMERICA, SOUTHEASTERN | : | |
| CARPENTERS REGIONAL COUNCIL, | | |
| DOUGLAS J. McCARRON, LARRY | : | |
| PHILLIPS, and WALTER DARNELL, | | |
| | : | |
| Defendants. | | NO. CV204-057 |

## O R D E R

Plaintiffs, Carpenters/Millwrights Local Union No. 865
("Local 865"), Fred Chappell, Sam Altman, Jerome Rooks, John
A. Graham, Harriet J. Smith, and Edwin Lashley, filed the
above-captioned case against Defendants, United Brotherhood of
Carpenters and Joiners of America (the "UBC"), Southeastern
Carpenters Regional Council (the "Council"), Douglas J.

AO 72A
(Rev. 8/82)

McCarron, Larry Phillips, and Walter Darnell, asserting that the merger of Local 865 into Local 256 violated their rights to fair representation under federal labor law.  Smith also asserts related federal and state law claims.

The UBC filed a counterclaim, asserting that Plaintiffs violated federal labor law by refusing to recognize the merger directive.

Presently before the Court are three motions for summary judgment.  The first, filed by the UBC, McCarron, and Darnell, seeks summary judgment as to their liability for the claims asserted in Plaintiffs' complaint.  Second, the Council and Phillips seek summary judgment as to Plaintiffs' claims against them.  Third, the UBC seeks summary judgment as to its counterclaim.  Because there are no genuine issues of material fact in dispute, and Counterclaimant/Defendants are entitled to judgment as a matter of law, the motions will be **GRANTED**.

## BACKGROUND

The UBC is an international labor organization headquartered in Washington, D.C.  Upon assuming office in 1995, UBC General President Douglas McCarron pursued a restructuring program, dissolving and merging local unions

across the country, in response to dwindling union membership in the country's workforce. McCarron took these actions pursuant to his authority under section 6(A) of the UBC constitution, which provides, in part:

> The United Brotherhood is empowered . . . in the discretion of the General President subject to appeal to the General Executive Board, where the General President finds that it is in the best interests of the United Brotherhood and its members . . . to . . . dissolve any Local Union . . ., [and] to merge or consolidate Local Unions. . . .

In 1996, Harriet Smith began working full-time as a secretary for Local 865 in Brunswick, Georgia. In 2002, Smith was elected financial secretary and treasurer of Local 865 and became a delegate to the Council. The Council and Local 865 were regional and local affiliates of the UBC, respectively. The Council's jurisdiction extends over Georgia, South Carolina, and North Carolina.

In December 2002, Local 865's business representative to the Council, Edwin Lashley, retired. Lashley recommended that Larry Phillips hire Smith as his replacement. Plaintiffs contend that Phillips hired Smith reluctantly, and treated her poorly, refusing to offer her the same training and networking opportunities that male business representatives received.

Although the Council is headquartered in Augusta, Georgia, Smith remained stationed in Brunswick.

Smith avers that her superiors, McCarron and Phillips, resented having a woman in the position of business representative, and that they retaliated against her, and Local 865, as a result. According to Smith, she was derided as a "mere office secretary," unqualified to perform her job duties. Smith contends that this mischaracterization of her qualifications demonstrates the sexist attitudes of McCarron and Phillips. Specifically, Plaintiffs allege that on December 6, 2003, Phillips told Smith that McCarron had told him that if all Phillips had to run Local 865 was a secretary, to shut it down.

Jerry Rhoades began working for the UBC in 1992, and started working in the UBC's southern district in 2000. In early March 2004, McCarron directed Rhoades to investigate the local unions in southeast Georgia as part of the union's ongoing restructuring effort. After Rhoades completed his assessment, he prepared a report recommending the merger of Local 865 into Local 256 in Savannah. In addition, the UBC's representative to the Council, Walter Darnell, consulted the

local unions affected, and wrote a letter to McCarron supporting the merger.

On April 30, 2004, McCarron dissolved Local 865 and merged the union membership into Local 256. Plaintiffs contend that Local 865 was the second largest union in the Council, after Local 225 in Atlanta. Plaintiffs report that Local 865 had more members, assets, and jobs than Local 256. They maintain that Phillips and McCarron knew that Local 865 was stronger financially than Local 256. According to Plaintiffs, Phillips and Darnell recommended a merger because of Smith's leadership role in the union. Relatedly, Plaintiffs aver that Phillips did not tell Rhoades about Local 865's superior financial position because of his sexist notions of Smith's abilities.

On May 7, 2004, Phillips directed Smith to report to Local 256 to work as an assistant business representative. Meddy Settles, the incumbent Local 256 business representative, had more experience than Smith, and had been a member of both Locals, 865 and 256. Instead, Smith took a week-long vacation. During Smith's vacation, she became ill, and went on sick leave for five additional weeks.[1]

---

[1]

    According to Smith's medical records, she was being treated for anxiety related to job stress during this time. Dkt. No. 132, Tab F,
(continued...)

On May 27, 2004, the Court granted the UBC's motion for a preliminary injunction, enjoining Plaintiffs from obstructing the UBC's restructuring efforts.

On June 14, 2004, Phillips fired Smith. Phillips informed Smith that, because Settles had been able to perform the work by himself during Smith's six-week absence, Phillips became convinced that an assistant business representative was unnecessary. Nonetheless, after the merger, Smith was elected as a delegate to the Council from Local 256. Smith ran for, but lost, the financial secretary-treasurer post for Local 256.

Plaintiffs posit that there was a merger and termination conspiracy between McCarron, Phillips, and Darnell. Smith claims that she suffered severe emotional distress because she knew that Local 865 was shut down because these men did not want a woman in a leadership position.

On August 24, 2005, the Court granted Defendants' motion to dismiss Count VII of the superceding complaint, and dismissed Counts II, III, IV, and VI as to the individual Defendants. Plaintiffs' remaining substantive law claims are set forth in Counts I, II, IV, and V of the superceding complaint. Count I is Plaintiffs' claim against Defendants

---

[1](...continued)
Smith Dep. (Oct. 12, 2005), Ex. 7.

6

alleging that they violated federal labor law by merging Local 865 into Local 256, in violation of the UBC constitution. The remaining counts are brought by Smith individually. Count II is Smith's Title VII employment discrimination claim against the UBC and the Council for her termination, while Count IV is Smith's retaliation claim against the UBC and the Council. Count V is Smith's state law claim for intentional infliction of emotional distress against all Defendants.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all

7

justifiable inferences in his favor. . . ",  <u>United States v.</u>
<u>Four Parcels of Real Property</u>, 941 F.2d 1428, 1437 (11th Cir.
1991)(en banc)(internal quotation marks omitted).


**DISCUSSION**

**I.   <u>No Evidence of Bad Faith in the Merger Directive</u>**

   Plaintiffs urge that McCarron's merger directive must be
set aside because it was made in bad faith.  Defendants deny
any discriminatory motive in the decision to dissolve Local
865.

   "The [UBC] Constitution (Constitution) grants the General
President broad discretionary authority both to determine the
viability of subordinate bodies and to define local unions'
territorial boundaries."   <u>Local No. 48 v. United Bhd. of</u>
<u>Carpenters & Joiners of Am.</u>, 920 F.2d 1047, 1049 (1st Cir.
1990).

   In <u>Local No. 48</u>, as in the instant case, local union
members sought relief from a merger decision by the UBC's
General President.  The court began its analysis by recognizing
that ongoing consolidation efforts provide a sufficient
justification to support a merger decision under the UBC
Constitution.  <u>Id</u>. at 1052.  Nonetheless, the court also found

8

that a merger decision could be set aside if bad faith was shown by the plaintiffs.  The <u>Local No. 48</u> court explained that "bad faith can be found on evidence that union officials acted contrary to the international's best interests, out of self-interest, or acted in an unconscionable or outrageous way." <u>Id</u>. at 1055.

In interpreting this standard, the Court gives broad deference to the policy decisions of the International and its duly elected leaders.

> There is a well-established, soundly based policy of avoiding unnecessary judicial intrusion into the affairs of labor unions. . . .  Courts have neither a monopoly on fairness nor a sufficient expertise in the administration of labor organizations to warrant pervasive judicial intervention in union affairs.

<u>Id</u>. at 1051.

In rejecting the plaintiffs' attempts to characterize the merger decision as unreasonable, and motivated by a "back-room deal," the <u>Local No. 48</u> court found that "[t]here was no authentic factbound controversy as to 'best interests.'" <u>Id</u>. at 1055, 1054.  The court also found the record lacking with regard to any evidence of self-interest or sinister motive behind the merger.  <u>Id</u>. at 1055.[2]  <u>See also</u> <u>Local 1052 v. Los</u>

---

[2]   Like Plaintiffs in the case <u>sub</u> <u>judice</u>, the <u>Carpenters Local 48</u>
(continued...)

Angeles County Dist. Council of Carpenters, 944 F.2d 610, 613-16 (9th Cir. 1991); Dresden Local No. 267 v. United Bhd. of Carpenters & Joiners of Am., 992 F.2d 1418, 1422-26 (6th Cir. 1993).

Here, the only proof that Plaintiffs have presented of bad faith is weak, inadmissible evidence of a broad-ranging conspiracy to eliminate Local 865 because Phillips, McCarron, and Darnell were set against having women in leadership roles in the union. Allegedly, Phillips told Smith that McCarron directed him to shut down Local 865 if the only person Phillips could find to run it was a secretary. The UBC contends that this statement constitutes inadmissible hearsay.

> In Thomas v. International Business Machines, 48 F.3d 478 (10th Cir. 1995), the court stated that 'the nonmoving party need not produce evidence in a form that would be admissible at trial but the content or substance of the evidence must be admissible.' Id. at 485 (citing Winskunas v. Birnbaum, 23 F.3d 1264, 1267-68 (7th Cir. 1994)). The Thomas court went on to state that 'hearsay testimony that would be inadmissible at trial may not be included in an affidavit to defeat summary judgment because 'a third party's description of . . . supposed testimony is not suitable grist for the summary judgment mill.' Id.

---

[2](...continued)
plaintiffs argued that the locals' different financial situations made the merger and dissolution decision unreasonable on economic grounds. Id. at 1053. The court dismissed such evidence as irrelevant, because the wisdom of the merger decision was not at issue. Id. at 1053 n.4.

Bush v. Barnett Bank, 916 F. Supp. 1244, 1256 (M.D. Fla. 1996).

Plaintiffs insist that the statement is not excluded by the hearsay rule. First, Plaintiffs assert that Phillips' statement is admissible because it was not offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Rather, Plaintiffs maintain that it was a verbal act, a command to Phillips that Local 865 be put out of existence. Yet, such a theory is inconsistent with the undisputed fact that McCarron was the final decision maker under the terms of the UBC constitution. Plaintiffs have offered the statement to prove the truth of the matter asserted.

Second, Plaintiffs argue that this statement is not hearsay, because the statement is inconsistent with Phillips' sworn deposition testimony. However, Phillips' supposed statement on December 6, 2003, was not made at a trial or hearing, so Rule 801(d)(1) does not apply.[3]

---

[3] That Rule provides, in relevant part, that

A statement is not hearsay if--

(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition[.]

Fed. R. Evid. 801(d).

AO 72A
(Rev. 8/82)

Finally, Plaintiffs assert that, because Phillips was McCarron's agent, and because the statement was made to further their civil conspiracy against Smith and Local 865, the statement is not hearsay pursuant to Rule 801(d)(2)(D) & (d)(2)(E). The Court is not convinced that Plaintiffs have established a foundation for admissibility under either exception. However, even if Phillips' statement would be admissible under one of these hearsay exceptions, the evidence is not significantly probative.[4]

As Defendants note, this statement could not have been made according to Plaintiffs' own time line. Plaintiffs contend that McCarron made this statement to Phillips during a meeting in Atlanta that occurred on December 29, 2003. However, Plaintiffs have averred that Phillips told Smith about this comment some three weeks earlier, on December 6, 2003. Dkt. No. 138 at 16. Where the circumstances make the nonmoving party's claim implausible, she must come forward with additional evidence to overcome summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

---

[4] As the Carpenters Local 48 court explained, assuming that statements by others can be attributed to the decision-maker, "for Rule 56 purposes, [such] proffer nevertheless falls short. Pejorative characterizations alone do not show bad faith." Id. at 1055.

12

Plaintiffs' related suggestion that McCarron made the merger decision based on the sexist prejudices of Phillips or Darnell is not supported by the evidence.  Plaintiffs have presented no evidence that McCarron discussed a plan to get rid of Smith during his December 29, 2003, meeting with Phillips. Moreover, there is no evidence that McCarron relied on anything Phillips told him when he merged the unions.

Plaintiffs contend that, because Phillips was the only person Rhoades consulted about the local unions in southeast Georgia, Phillips is the only one who could have told him that Local 256 had a vibrant, progressive membership, while Local 865 was stagnant.  Yet, Rhoades was offering his own opinion when he made this characterization, and he had other sources of information, including certain documents that he reviewed. Also, Rhoades had worked in the UBC's southern district since 2000.  As to the recommendation made by Darnell, Plaintiffs have not alleged that Darnell suggested that Smith was unqualified for her job because she was a woman.[5]

---

[5] While Smith casts aspersions against Darnell for engaging in sexual harassment, the evidence that he actually did so is insubstantial. According to Smith, between 1996 and 2004, Darnell asked her to stay after work on four to six occasions.  Smith alleges that she declined these invitations and that nothing else was said thereafter.  Smith also faulted Darnell for a comment that he made on a business trip.  According to Smith, Darnell stated that, because his room was across from her room, he

(continued...)

AO 72A
(Rev. 8/82)

Plaintiffs' lawsuit rests upon the allegation that Darnell, McCarron, and Phillips conspired together to dissolve Local 865 because they had sexist views of Smith's leadership ability. Yet, the evidence is not probative of a far-reaching plot to dissolve the Local to get rid of Smith. Indeed, after the merger, Smith won election as a delegate from Local 256 to the Council. Furthermore, Phillips initially asked Smith to stay on as an assistant business representative to the merged Local 256. This evidence significantly undermines Plaintiffs' conjecture that these men eliminated Local 865 because they did not want a woman in a leadership post.

Moreover, if Local 865 had more members and resources than Local 256, as Plaintiffs aver, then its former members would have been able to keep Smith in a position of power in the restructured local union. If Plaintiffs' allegations about the strength of Local 865 are true, then a plan to eliminate it to get rid of Smith would be ineffective. This detail also casts doubt on whether Defendants would hatch such a disproportionate, but inexpedient, strategy.

---

[5](...continued)
would be able to watch her door. Smith also related that Darnell implied that he could get her certain pension benefits, but Smith did not aver that this suggestion was related to any harassment or sexual innuendo of any kind. Smith has not asserted a sexual harassment (quid pro quo or hostile work environment) claim based on any of Darnell's conduct.

14

Plaintiffs' theory of the case is too implausible to overcome summary judgment based on the present record. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal citations omitted). "Evidence that is based on conjecture or farfetched supposition is not sufficient to derail the operation of the rule." Local No. 48, 920 F.2d at 1051.

Summary judgment is appropriate in Defendants' favor as to Count I of Plaintiffs' complaint, and the UBC is entitled to summary judgment as to its counterclaim. The Court's preliminary injunction shall be made permanent.


## II.  Employment Discrimination: Termination

On May 7, 2004, Phillips directed Smith to report to Local 256 to work as an assistant business representative. Instead, Smith took six weeks off, using vacation and sick time. During the course of Smith's absence, Phillips became convinced that two business representatives were not needed for a local the size of the new Local 256, which has 750 members. The only Local in the Council with more than one business representative was Local 225 in Atlanta, which has more than 2,000 members.

Phillips determined that Local 256's business representative, Meddy Settles, was able to handle the increased workload on his own. On June 14, 2004, Phillips informed Smith that the Council would not need her services as an assistant business representative. Smith maintains that Phillips discharged her from her position with the Council because of her sex.[6]

In cases where the plaintiff relies on circumstantial evidence of discriminatory treatment, the applicable framework is set out by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). In that case, the Supreme Court explained

---

[6]

Contrary to Smith's assertion, she has not presented any direct evidence of discrimination. According to Lashley, Phillips was reluctant to hire Smith as Local 865's business representative in 2002, because of her lack of experience, or because she was a woman. Lashley Dep. 42-45. Even when this evidence is viewed in the light most favorable to Smith, statements must relate to the decision-making process at issue to constitute direct evidence. Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).

For the same reason, the statement that Smith attributed to McCarron – that Phillips should shut down Local 865 if all he had to run it was a secretary – does not qualify as direct evidence, either. Assuming, arguendo, that the statement was made, and that it is admissible, it would only be circumstantial evidence.

> [D]irect evidence is evidence that, if believed, proves the existence of a fact in issue without inference or presumption[,] . . . [and] is composed of only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of some impermissible factor.

Schoenfield v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999)(internal citation, quotation marks omitted).

AO 72A
(Rev. 8/82)

the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment. First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981)(internal citations omitted).

Where a position is eliminated due to a reduction in force, a plaintiff may establish a prima facie case by demonstrating that (1) she was in a protected class, (2) she was discharged, (3) she was qualified for another available position at the time of discharge, and (4) the employer intended to discriminate on the basis of sex in deciding not to place her in the other position. Mitchell v. Worldwide Underwriters Ins. Co., 967 F.2d 565, 567-68 (11th Cir. 1992); Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045-46 (11th Cir. 1989); Mauter v. Hardy Corp., 825 F.2d 1554, 1557 (11th Cir. 1987).

Smith has not shown that she was qualified for another available position when Phillips informed her that the

17

assistant business representative position was not available as a result of the union downsizing and restructuring efforts. Smith's discharge was "an unfortunate result of a reduction in force but it is not, without more, evidence of unlawful discrimination." <u>Lockaby v. United Testing Group, Inc.</u>, 986 F. Supp. 1400, 1405 (N.D. Ga. 1997).

The assistant business representative position was not filled at all, and Smith has not presented evidence on which "an ordinary person could reasonably infer discrimination if the facts presented remain unrebutted." <u>Mitchell</u>, 967 F.2d at 567 (quoting <u>Carter v. City of Miami</u>, 870 F.2d 578, 583 (11th Cir. 1989)); <u>Lockaby</u>, 986 F. Supp. at 1405. Even if Phillips erred in determining that there was not enough work for two people to justify keeping an assistant business representative position, such a fact would not establish sex discrimination. <u>Id</u>.

Because Smith has not established a prima facie case of discrimination, summary judgment is appropriate in Defendants' favor as to Count II of Plaintiffs' complaint.

AO 72A
(Rev. 8/82)

III.     **Retaliation for Complaints of Unlawful Harassment**

Smith also avers that the union was dissolved and that she was terminated in retaliation for her complaints of unlawful sexual harassment.  Under the law, and as a matter of logic, the protected activity must precede any retaliation.  The only possible complaint identified by Smith before the alleged retaliation occurred happened about seven years earlier.

In 1996 or 1997, Lashley spoke to Phillips about Darnell's supposed harassment of Smith.  According to Lashley, he told Phillips that Darnell "wanted to go with" Smith, but did not provide any other details about Darnell's conduct.  Lashley Dep. 61.  There is no evidence that Smith asked Lashley to report this matter to Phillips.  Smith did testify that she talked to Lashley about Darnell's request that she stay after work.  Yet, it appears that Smith told Lashley about this incident upon <u>Lashley's</u> request.  Smith Dep. 54 (Oct. 12, 2005); Lashley Dep. 58.  Consequently, it is doubtful that Smith engaged in any protected conduct.  <u>E.g.</u>, <u>Gupta v. Fla. Bd. of Regents</u>, 212 F.3d 571, 587 (11th Cir. 2000).

In any event, the temporal remoteness between the complaint and the retaliation is too great to permit an inference of a causal connection between the two events.

Higdon v. Jackson, 393 F.3d 1211, 1221 (11th Cir. 2004); compare Clark County Sch. Dist., 532 U.S. at 274 ("Action taken . . . 20 months later suggests, by itself, no causality at all.") with Goldsmith v. City of Atmore, 996 F.2d 1155, 1163-64 (11th Cir. 1993)(temporal proximity combined with knowledge of protected conduct sufficient to create a jury question regarding causation).

Summary judgment is warranted in Defendants' favor as to Count IV of Plaintiffs' complaint.


## IV. Intentional Infliction of Emotional Distress

Smith has not presented any evidence that Defendants engaged in extreme or outrageous behavior that would permit recovery for intentional infliction of emotional distress. Smith's state law tort claim is premised on the theory that Defendants' conduct was outrageous because they dissolved Local 865 out of existence because of her sex. Because there is insufficient evidence to support such a theory, Smith has not shown severe emotional distress, of a kind that a reasonable person could not be expected to endure. E.g., Quarles v. McDuffie County, 949 F. Supp. 846, 855-56 (S.D. Ga. 1996).

AO 72A
(Rev. 8/82)

Defendants are entitled to summary judgment as to Count V of Plaintiffs' complaint.

**CONCLUSION**

For the reasons explained above, Counterclaimant/ Defendants' motions for summary judgment are **GRANTED**. See Dkt. Nos. 125, 127, & 129. The Clerk is directed to enter judgment accordingly. The preliminary injunction entered by the Court on May 27, 2004, is hereby **DECLARED** the permanent injunction order of the Court. See Dkt. No. 23.

SO ORDERED, this _____10th_____ day of August, 2006.


JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)